## 774

**BURKE et al. v. EMSCO DERRICK & EQUIPMENT CO. et al.**

**No. 7823.**

**Circuit Court of Appeals, Ninth Circuit.**

**Sept. 22, 1936.**

Frederick S. Lyon, Leonard S. Lyon, and Lewis E. Lyon, all of Los Angeles, Cal., for appellants.

Ford W. Harris, of Los Angeles, Cal. (R. Welton Whann and Ward D. Foster, both of Los Angeles, Cal., of counsel), for appellees.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellants filed their bill of complaint, charging appellees with infringing a patent of which appellant Mark P. Burke is the owner, and appellant the Oil Country Specialties Manufacturing Company is the sole licensee. The bill prayed for an injunction restraining further infringement of the patent and for an accounting of profits and damages. Appellees answered, pleading invalidity of the patent and denying any infringement thereof. On final hearing, the District Court held the patent valid, but not infringed, and accordingly entered its decree dismissing the bill. This appeal is from that decree.

The patent in question is No. 1,579,753, issued to appellant Burke on April 6, 1926. It purports to be for an improvement in driving mechanisms for oil well rigs. The only improvement actually disclosed or claimed therein is an improvement in counterbalances used in such mechanisms.

The driving mechanism of the standard rig commonly used in drilling and pumping oil wells comprises a band wheel mounted on a drive shaft on which there is also a crank; a pitman connecting the crank to the rear end of a walking beam, which is centrally pivoted on a Samson post; and connections extending from the front end of the walking beam into the well. These connections may be rods driving a pump at the bottom of the well, or, if drilling is in progress, a cable carrying a string of drilling tools.

When the shaft is driven by an engine or other prime mover, the crank revolves and rocks the walking beam, imparting to the ends thereof an up-and-down movement, which, in turn, is communicated to the pump rods or to the string of tools, as the case may be. The load, in either case, is carried on the upstroke of the front end of the walking beam. On the downstroke, the tools or pump rods are, by their own weight, returned or assisted in returning to the bottom of the well. As the driving power which operates the crank is constant, the steady rotation of the shaft is interfered with and changed between the upstroke and the downstroke, because of the variation in load. Irregularity of action results. To overcome this difficulty, a counterbalance is needed.

This need was recognized, and counterbalances were devised and used for the purpose indicated, long prior to Burke's invention. Various types of counterbalance have been used in oil well rigs. One, sometimes called the "reciprocating" type, consists of a weight secured to the rear end of the walking beam. Another, sometimes called the "rotating" type, consists of a weight secured to the band wheel, the shaft or the crank, and rotating, or revolving, therewith.[1] Both types were in common use before Burke's time. His patent relates only to counterbalances of the "rotating" type.

---

[1] As the counterbalance revolves, its movement, during one half of each revolution, is upward; during the other half, downward. It is, therefore, so positioned with respect to the shaft that its upward and downward movements correspond with those of the crank, the pitman, and the rear end of the walking beam. Thus the effect produced is similar to that of a "reciprocating" counterbalance.

Claims 1, 2, 3, 4, 9, and 10 of this patent are in suit. The first four claims [2] describe the usual driving mechanism of an oil well rig, with a rotating counterbalance having connections which are "releasable," so as to permit the shaft and band wheel to move without the counterbalance. The claims themselves do not indicate what the counterbalance consists of, what its connections are, or how they are "releasable," but from the specification and drawings it appears that the counterbalance consists of a series of weights, or sections, mounted on a pair of rods, at or near one end thereof, and held together by a pair of bolts. The rods, at their other end, are connected to the shaft by a loose bearing, which turns thereon. The outer, or "head," section of the counterbalance is provided with brackets and bolts, by means of which the counterbalance is detachably connected to the band wheel. By unfastening the bolts, the connections with the band wheel are "released," and the counterbalance ceases to revolve, but retains its connection with the shaft and remains suspended therefrom. Thus, when not needed, the counterbalance may be "released" and rendered inactive, without being removed from the mechanism. This "releasability" is the only novel [3] feature of the counterbalance described in claims 1, 2, 3, and 4.

This feature is not found in the Emsco mechanism here complained of. The Emsco mechanism includes a rotating counterbalance, but this counterbalance is not connected to the band wheel or the shaft, and cannot be "released" without being completely removed. It is secured to the crank, revolves therewith, and is removable therefrom, but, until so removed, it cannot be "released," or rendered inactive. When so removed, it is not merely "released," but is completely disconnected from the mecha-

nism. Hence, though removable, it is not "releasable," within the meaning of the Burke patent, and, consequently, does not infringe either of the first four claims thereof.

Claims 9 and 10 describe the usual driving mechanism of an oil well rig, [4] including a drive shaft, an "arm" on said shaft, and a sectional counterbalance on said "arm," the sections thereof being (as described in claim 9) interlocked with said "arm," or (as described in claim 10) having recesses therein adapted to interlock with it. Precisely what or where this "arm" is cannot be ascertained from the patent. The expression occurs only in claims 9 and 10, and they do not indicate what it means. No "arm" is referred to or designated, as such, in the specification or in the drawings.

The only things described in the Burke patent or found in the Emsco mechanism which could possibly be regarded as "arms" of the shaft are (1) the pair of rods on which the Burke counterbalance is mounted, that is to say, a pair of rods connected to the shaft by a loose bearing, and (2) the crank to which the Emsco counterbalance is secured. If the "arm" referred to in claims 9 and 10 is the pair of rods on which the Burke counterbalance is mounted, there is no infringement, because, as heretofore shown, there are no such rods in the Emsco mechanism. If the "arm" referred to in claims 9 and 10 is the crank to which the Emsco counterbalance is secured, still there is no infringement, because the sections comprising the Emsco counterbalance are not interlocked with the crank and do not have recesses adapted to interlock with it. They interlock with each other, but not with the crank nor with anything which might be considered an "arm" of the shaft.

If construed to cover any counterbalance which is secured to the crank of an

---

[2] The broadest of these is claim 1, which reads: "Driving mechanism for oil well rigs, comprising, a drive shaft, a crank thereon, a walking beam connected to be operated by said crank, connections from said walking beam and leading into the well, a counterbalance adapted to cooperate with said shaft, and connections adapted to fix said counter-weight so as to move with said shaft, said connections being releasable so as to permit said shaft to move without said counter-weight."

[3] Counterbalances connected to the shaft, counterbalances connected to the band wheel, and counterbalances which could be disconnected and removed from

the mechanism, were old in the art when Burke made his invention.

[4] Claim 9 reads: "In a driving mechanism for oil well rigs, a drive shaft, connections from said shaft leading to the well, an arm on said shaft, and a counterweight on said arm including a head and a series of sections detachably interlocked with said arm and secured to said head."

Claim 10 is the same, except that, in it, the sections are described as "mutually interlocking sections having recesses therein adapted to interlock with said arm, and means for detachably securing said head and said sections together."

776

oil well rig, or any counterbalance which is composed of sections, claims 9 and 10 are void for lack of novelty, since, as shown by the evidence, such counterbalances were old in the art when Burke made his invention. If construed to cover any counterbalance whose sections are "interlocked" or "mutually interlocking," these claims are void for want of invention, since, obviously, the thought of "interlocking" two or more pieces of metal by fitting them into each other and fastening them together with bolts requires no inventive genius, but only a moderate degree of mechanical skill. Rejecting all such constructions, and assuming the validity of these claims, we must and do hold them not infringed.

Decree affirmed.

HANEY, Circuit Judge (dissenting).

I concur with the majority that infringement of claims 2, 3, 9, and 10 by appellee is not shown.

In claim 1, appellant patented a combination, consisting of the following elements: (1) "A drive shaft, (2) a crank thereon, (3) a walking beam connected to be operated by said crank, (4) connections from said walking beam and leading into the well, (5) a counterbalance adapted to cooperate with said shaft, (6) and connections adapted to fix said counterweight so as to move with said shaft, said connections being releasable so as to permit said shaft to move without said counterweight."

Appellee argues that its counterweight does not infringe because of an alleged difference in the sixth element. The distinction is claimed to be that appellee's counterweight is not "releasable" but only "removable." But when it is removed it is "released." Appellant's counterweight may also be released by entirely removing it. The thing patented, however, includes a "releasable" counterweight, and, according to the reading of the claim, it makes no difference whether the counterweight is "releasable" by removal, or by disconnection. The construction given by the majority to the word "releasable" is too narrow, in that both counterweights are "releasable" by removal. I therefore believe that appellee infringes this claim if such claim is valid.

I see no distinction between claim 4 and claim 1, except that it is stated that the counterweight co-operates with the shaft "in order to counter-balance the pump rod string." The quoted part is functional and void. Omitting it from the claim, I see no difference between the two claims.

For these reasons I dissent from the majority opinion, and believe the validity of claims 1 and 4 should be considered.